# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * *
LILIA TELLEZ-GARCIA,              *
                                  *
                   Petitioner,    *     No. 17-816V
                                  *     Special Master Christian J. Moran
v.                                *
                                  *
SECRETARY OF HEALTH               *     Filed: October 9, 2019
AND HUMAN SERVICES,               *
                                  *     Onset of shoulder pain, fact ruling
                   Respondent.    *
* * * * * * * * * * * * * * * * * * * * *
```

Shealene P. Mancuso, Muller Brazil, LLP, Dresher, PA, for petitioner;
Dhairya D. Jani, United States Dep't of Justice, Washington, DC, for respondent.

### TENTATIVE FINDINGS OF FACT

A one-day hearing was held in Denver, Colorado, on October 1, 2019.  At the hearing, testimony was taken from petitioner, Ms. Lilia Tellez-Garcia, and three witnesses, Ms. Susan Simono, Ms. Tammy Reck, and Ms. Tisha Alps.  All witnesses appeared in-person.  At the end of the hearing, the undersigned tentatively found that: (1) Ms. Tellez-Garcia had met her evidentiary burden of establishing that her shoulder pain started within 48 hours of receiving the tetanus-diphtheria-acellular pertussis ("Tdap") vaccine on November 12, 2015, and (2) that Ms. Tellez-Garcia received the Tdap vaccine in her left shoulder.  For the purposes of the record, the bases for these tentative findings are briefly reviewed below. [1]

*        *        *

Petitioners are required to establish the elements of their case by a preponderance of the evidence.  42 U.S.C. § 300aa–13(1)(a).  The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence."  Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).  Here, the Secretary contested (1) whether Ms. Tellez-Garcia's onset of pain occurred within 48 hours of the administration of her vaccine, and (2) whether Ms. Tellez-Garcia received the vaccine in her left shoulder, which she claimed to be the injured shoulder.  See Resp't's Br., filed April 2, 2019, at 7.  Accordingly, the undersigned evaluated whether the

---

[1] The undersigned is entering a tentative ruling in the case either party wants to submit additional documentary evidence while Ms. Tellez-Garcia's claim is pending.

existence of onset within 48 hours, and whether vaccine administration in petitioner's left shoulder, were more probable than not.

The process for finding facts in the Vaccine Program generally begins with analyzing the medical records, which are required to be filed with the petition.  42 U.S.C. § 300aa–11(c)(2).  As a matter of practice, when making findings of facts the undersigned gives substantial weight to records, such as medical records, that are created contemporaneously with the events they describe.  Appellate courts have recognized that fact-finders are well-within their discretion when choosing to give significant weight to contemporaneously credited records.  See, e.g., Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).  Of course, the presence or absence of medical records is not dispositive or binding on the outcome.  Instead, the undersigned is tasked with evaluating the entirety of the evidence in the record and determining, based on that evidence, which facts are more likely to be true than not.

*      *      *

**Onset of Shoulder Pain**

Ms. Tellez-Garcia claims that the onset of her shoulder pain occurred immediately following her vaccination on November 12, 2015.  Pet. at 1, ¶ 2.  However, Ms. Tellez-Garcia did not complain of this pain to a medical provider until June 17, 2016, when she reported having had persistent left shoulder pain since her vaccination seven months earlier.  Exhibit 3 at 33.  The Secretary points to this significant delay in seeking treatment as evidence that Ms. Tellez-Garcia did not meet her burden in establishing that onset occurred within 48 hours of vaccination.  Resp't's Br. at 7-8.

Ms. Tellez-Garcia presented credible testimony from Ms. Simono that, immediately following her vaccination, Ms. Tellez-Garcia returned to work where she complained to her co-worker, Ms. Simono, that her shoulder was hurting from the vaccination.  Ms. Simono further testified to having to assist Ms. Tellez-Garcia with office tasks such as lifting items onto shelves in the months following her vaccination.  Ms. Tellez-Garcia additionally presented credible testimony from Ms. Reck that Ms. Tellez-Garcia complained of shoulder pain shortly after her vaccination and required assistance with household tasks.  Ms. Reck was also able to credibly explain why she remembered these complaints happening during this particular time, namely because it was close to the time when she was dog-sitting for Ms. Tellez-Garcia during an out-of-town trip Ms. Tellez-Garcia took in November 2015.

Ms. Tellez-Garcia also presented evidence of a February 2016 medical appointment in which she complained of heart attack symptoms, including a pain that radiated from her left shoulder to her chest.  However, the records for this visit are incomplete and an EKG was never ordered by the provider.  While this evidence may tend to establish Ms. Tellez-Garcia's claim of onset by showing that she complained of shoulder pain earlier than her June 2016 appointment, the undersigned finds this evidence fairly unpersuasive given the ambiguous record of it, as well as the unusual choice of the medical provider not to order any testing in response to suspected heart attack symptoms.

The undersigned notes that it is unusual for Ms. Tellez-Garcia to have waited seven months before seeking medical treatment for her shoulder injury, especially given her descriptions of extreme pain that she experienced during this time.  However, Ms. Tellez-

Garcia's testimony, as well as that of her witnesses, consistently depicted Ms. Tellez-Garcia as an individual who tends to neglect her own physical health and was especially doing so in light of a stressful work environment caused by a buy-out at her place of employment leading up to and following the date of her vaccination.  Additionally, her witnesses' testimony is consistent as to onset occurring immediately after vaccination, and because Ms. Tellez-Garcia did not see a medical provider at all between November 2015 and June 2016, there is no contradictory medical evidence or appointments during this time when Ms. Tellez-Garcia did not mention her shoulder injury.  Thus, the fact that Ms. Tellez-Garcia reported at her June 11, 2016 appointment her shoulder injury as having begun seven months prior is more persuasive in light of the absence of contradictory medical documentation during the relevant time period.  For these reasons, the undersigned finds that the medical records that do exist, coupled with the witness testimony, are not outweighed by Ms. Tellez-Garcia's delay in seeking treatment.

Ultimately, the undersigned has reviewed all the medical records and the testimony provided by Ms. Tellez-Garcia and her witnesses.  The undersigned finds that all the affirmative evidence in the medical records is consistent with the claims of the petitioner and the testimony of her witnesses.  Ms. Tellez-Garcia's decision to not seek treatment sooner does tend to indicate that Ms. Tellez-Garcia's pain was not truly debilitating, but it is not sufficient to overcome the weight of the other evidence presented in her claim.  Accordingly, the undersigned tentatively finds that preponderant evidence exists to conclude that, more likely than not, Ms. Tellez-Garcia's shoulder pain started within 48 hours of her vaccination.

## Shoulder in which Vaccine was Administered

Ms. Tellez-Garcia claims that the Tdap vaccine was administered in her left shoulder, and has consistently report her shoulder pain as manifesting in her left shoulder.  However, the medical documentation from her visit to Associates in Family Medicine on November 12, 2015, indicates that the vaccine was administered in her "right deltoid."  Exhibit 3 at 1.  The Secretary points to this contradiction as evidence tending to show that Ms. Tellez-Garcia has not met her burden of showing a resulting shoulder injury.  Resp't's Br. at 7.

The undersigned heard testimony from Ms. Tisha Alps, who administered Ms. Tellez-Garcia's vaccine.  She testified to having administered the vaccine in the right shoulder, as she noted in Ms. Tellez-Garcia's records; however, she admitted it was possible that she could have made an error.  Additionally, Ms. Tellez-Garcia presented evidence of another apparent typo in the records created by Ms. Alps, making it more plausible that Ms. Alps made an error in recording the shoulder where the vaccine was administered.

Recognizing that it is human nature to make errors occasionally, the undersigned finds that it is more likely than not that Ms. Alps simply misrecorded the shoulder of vaccine administration, given Ms. Tellez-Garcia's consistent complaints thereafter regarding her left shoulder.  The undersigned found Ms. Alps to be a credible witness.  However, because she had no independent recollection of Ms. Tellez-Garcia's vaccination—nor would anyone expect her to given the large volume of patients she sees—and her only information about the vaccination comes from her own records, the undersigned finds that Ms. Alps's recording the vaccine site as the right shoulder was in error and that the vaccine was actually administered in Ms. Tellez-Garcia's left shoulder.

3

\*       \*       \*

Ultimately, the undersigned has reviewed all the medical records and the testimony provided by Ms. Tellez-Garcia and her witnesses.  The undersigned finds that the affirmative evidence in the medical records is consistent with the claims of the petitioner and the testimony of her witnesses.  Ms. Tellez-Garcia's decision to not seek treatment sooner does tend to indicate that Ms. Tellez-Garcia's pain was not truly debilitating, but it is not sufficient to overcome the weight of the other evidence presented in her claim.  Additionally, it is more likely than not that the recording of the vaccine administration as occurring in the right shoulder was in error.  Accordingly, the undersigned tentatively finds that preponderant evidence exists to conclude that, more likely than not, (1) Ms. Tellez-Garcia's shoulder pain started within 48 hours of her vaccination, and (2) the vaccine was administered in Ms. Tellez-Garcia's left shoulder.

Accordingly, a status conference will be held on **Thursday, November 7, 2019, at 11:30 A.M. Eastern Time** to discuss the next steps.  Petitioner should be prepared to discuss her progress in quantifying the amount of compensation.  Respondent should be prepared to discuss whether the undersigned should enter a formal ruling finding entitlement to compensation.

Any questions may be directed to my law clerk, Haley Hawkins, at (202) 357-6360.

**IT IS SO ORDERED.**

s/ Christian J. Moran
Christian J. Moran
Special Master

4